CRANE v. ANDREWS et al.

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

Appeal from Special Term, Orange County.

Action by Frederick Crane against Chase Andrews, Harold G. Villard, and the Hudson Iron Company. Judgment for plaintiff, and the two last-named defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, GAYNOR, JENKS, and BURR, JJ.

Wm. M. Wherry, Jr. (John A. Laing, on the brief), for appellants.
Graham Witschief (Wm. Douglas Moore, on the brief), for respondent.

GAYNOR, J. I do not see any reason for reversing this judgment. Two tracts were conveyed and accepted. There were no funds to buy the other, and no demand for it. This is not like a contract to sell three pieces of land. The main object was to rehabilitate and establish a company, and get it in operation and on a working basis. They could do it with the three tracts or mines, or only with one or two, and they all acquiesced in two. It is so found on ample evidence. There was an indebtedness to the plaintiff of the $94,000, and the main object was to make that a lien on the land of the company, whatever it should get and go to work on.

Concededly one of the tracts was not acquired by the company, but it was rehabilitated on the basis of two, and could scarcely pay for those. The point is, Was the finding of the trial judge to that effect without sufficient evidence? It is scarcely questioned.

The judgment should be affirmed.

HIRSCHBERG, P. J., and WOODWARD, J., concur.

BURR, J. I dissent from the decision about to be made. I do not think that the judgment should be reversed on account of variance between the complaint and the proof. The original agreement between Andrews and Crane, the plaintiff, related, among other things, to three parcels of land. It was an indivisible contract unless modified by consent of the parties. Only two of the three parcels were actually conveyed. Although full performance is alleged in paragraph 19 of the complaint, it seems to me that when this is read in connection with paragraph 7, to the effect that the conveyances that are there recited were made pursuant to the terms and provisions of the contract, it may fairly be implied that the pleader intended to allege that there was a waiver of the conveyance of the third parcel. If the defendants Villard and Hudson Iron Company, the only defendants appealing, had not admitted the validity of the contract sued upon, I should be inclined to think it was void on its face for want of consideration and for nonexistence of the subject-matter. By its terms Crane, the party of the second part thereto (the plaintiff here), was under no obligation to do anything. It appears from the instrument itself that he did not,

at the time that it was signed, have any options upon any of the property described in the agreement, nor control any, and he did not obligate himself to secure any. To test its validity, assume that Andrews was suing Crane for damages for failure to assign options on the land described. It would be a perfect defense to say: I have none, never had any, and never bound myself to secure any.

Probably the admission in the answer estops them from raising this question, for there may have been a consideration not recited in the instrument itself, and for aught that appears in the complaint he may have been in a position to compel the delivery of options although he did not actually have them. I think that the evidence conclusively establishes that the contract was never performed by Crane, and that any conveyances that were made of any portion of the property were not made in pursuance of its provisions, but in pursuance of an entirely new arrangement. Crane never secured an option upon any one of the pieces of property, and the court has so found; nor did he ever control any. Mershon, who was the "promoter" of the various mining schemes which seem to have resulted in loss to every one concerned but him, pretended that he had some sort of an option or control upon two out of the three pieces, but the evidence clearly establishes the contrary. The proof is overwhelming that there was no enforceable option in existence. There had been one as to one of the parcels, but it had expired before the agreement in suit was made. Mershon's claim that he voluntarily arranged to give Crane the benefit of any interest in or control over the property that he had is mere pretense. He had nothing. The conveyances that were made of parcels No. 1 and No. 3, as described in the contract, were manifestly not in furtherance of the provisions of the contract between Andrews and the plaintiff. By that contract $34,500 was to be paid by Andrews for all three pieces. The owners of parcels 1 and 2 received in cash $10,300 over and above mortgages of $17,200. So far as they were concerned, therefore, the price for two pieces was $27,500. Andrews paid no part of this purchase price. Substantially all of the cash was paid by Villard. But when the property reached Eaton, the agent of the iron company, to hold it until they were ready to take it over, there were mortgages upon the property, which, with the cash paid, made the cost price of these two tracts $45,470.67. The difference, nearly $18,000, was represented in a mortgage held by one Preston for about $22,000. It was conceded that Preston was a mere trustee for others; that he personally had no interest in the mortgage, except as such trustee. He testified that he did not know whom he was trustee for, except Mershon. Villard participated in that mortgage on account of cash advanced by him for the purchase of the property to the extent of $4,000. The remaining $18,000, it is perfectly apparent, was the profit which Mershon himself pocketed out of the transaction. He was misleading Crane by pretending to him that he was acting in his interest, although he swore he had no authority to bind him in any way. He was misleading Villard by pretending that he was acting in his interest. He was pocketing the profit himself. After one piece of property had been taken over by the Hudson Iron Company, which had cleared off the mortgages upon it, and after it had completed ar-

rangements to take over the second piece, and had spent a large sum in getting the plant into workable shape, and after nearly two years had expired, during which time Crane made no claim under his pretended contract, this suit is started, and Mershon is relied upon to "swear it through." Crane does not appear on the trial as a witness at all.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event.

JENKS, J., concurs.